UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-00469-MOC
(3:18-cr-00291-MOC-DCK-1)

| | |
|---|---|
| RUDOLPH CARRYL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on initial screening of Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [CV Doc. 1].[1]

## I. BACKGROUND

On August 22, 2018, Pro Se Petitioner Rudolph Carryl ("Petitioner") was charged in a Bill of Indictment with one count of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff; C.F.R. § 240.10b-5; and 18 U.S.C. §§ 2 and 3147 (Count One); six counts of wire fraud in violation of 18 U.S.C. §§ 1343, 3147, and 2 (Counts Two through Seven); and two counts of transactional money laundering in violation of 18 U.S.C. § 1957(a) and 2 (Counts Eight and Nine). [CR Doc. 3: Bill of Indictment]. The Indictment set forth the offense conduct supporting the charge on Count One in substantial detail. [See CR Doc. 3 at 1-3]. The Indictment charged, in summary, as follows.

Petitioner, holding himself out as an investment advisor and owning and operating Carryl Capital Management (CCM), solicited two victims, M.G. and W.B., to give Petitioner money to

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 3:20-cv-00469-MOC, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 3:18-cr-00291-MOC-DCK-1.

invest on their behalf. [CR Doc. 3 at ¶¶ 1-4, 6]. In February and March 2015, Petitioner solicited M.G., a retired nurse and resident of Creedmoor, North Carolina, to wire Petitioner a total of approximately $64,000 based on Petitioner's representations that he would purchase stocks on M.G.'s behalf. Petitioner and M.G. knew each other from childhood. In or about May 2015, Petitioner solicited W.B., a retired United States Air Force veteran, and his wife, A.B., both residents of Davidson, North Carolina, to invest approximately $350,000 in a purported investment fund being managed by Petitioner. [Id. at ¶ 6]. Petitioner made numerous misrepresentations to induce the victims to invest and fabricated information regarding the purported investments after he received the money. [Id. at ¶¶ 7, 9]. Rather than investing the money as promised, Petitioner used much of the money from the victims on personal and other unrelated expenses. Petitioner also withdrew a substantial amount in cash. [Id. at ¶¶ 5, 10].

All the while, Petitioner was the target of a federal criminal investigation. He had been interviewed by special agents with the Federal Bureau of Investigation on or about January 23, 2015 and on or about January 30, 2015 regarding investments Petitioner had previously sought from other victims in or around 2012. [Id. at ¶ 8]. Petitioner concealed this information from W.B., A.B., and M.G. [Id.]. Based on Petitioner's lies regarding the status of M.G.'s investments and concealment of his being targeted in a federal investigation, M.G. invested additional money with Petitioner in 2015 and 2016. Petitioner again used much of this money for personal and other unrelated expenses. [Id. at ¶ 12]. W.B. made numerous requests for statements from Petitioner reflecting the status of his investment. Petitioner, however, never provided any statements and instead made false claims that the investments were doing well and making money. [Id. at ¶ 13]. In January 2017, after Petitioner had been convicted in the Eastern District of New York for wire fraud and while he was awaiting sentencing, W.B. requested to meet with Petitioner to discuss the

status of his investment. Petitioner, through electronic communication, made materially misleading statements to avoid the requested meeting. [Id. at ¶ 14]. For the next several months, Petitioner continued lying to W.B. to avoid speaking with him and to conceal Petitioner's past fraud. After multiple continuances at Petitioner's request, Petitioner was ordered to report to begin serving his sentence for his conviction in the Eastern District of New York on October 24, 2017. [Id. at ¶¶ 15-20].

In the criminal proceedings in this Court, Count Eight of the Indictment was dismissed on the Government's motion "to streamline the proof and reduce the potential for juror confusion." [CR Doc. 30]. The parties reached a plea agreement pursuant to which Petitioner agreed to plead guilty to Count One and the Government agreed to dismiss the remaining Counts. [CR Doc. 33 at 1: Plea Agreement].

A United States Magistrate Judge accepted Petitioner's guilty plea after conducting a thorough plea colloquy, during which Petitioner was represented by counsel. [See CR 36: Acceptance and Entry of Guilty Plea; CR Doc. 70: Plea Hearing Tr.]. Under oath, Petitioner told the Court that he had received a copy of the Indictment and had discussed it with his attorney. [CR Doc. 70 at 4]. The Court then reviewed Count One with Petitioner in detail, noting that paragraphs one through 20 set forth specific factual allegations that formed the basis of Count One. Count One charged, in pertinent part, as follows:

> 22. From in or about January 2015 through at least October 2017, in Mecklenburg County, within the Western District of North Carolina and elsewhere, [Petitioner] together with persons known and unknown to the Grand Jury, willfully, directly and indirectly, by use of the means and instrumentalities of interstate commerce and the mails, used and employed manipulative and deceptive devices and contrivances by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under

3

> which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would and did operate as a fraud and deceit upon investors and others, in connection with the sale of securities, to wit: the investments in stocks and funds described above.
>
> 23.    At the time [Petitioner] committed this offense, he was on release pursuant to and order dated August 26, 2015 pursuant to the provisions of Title 18, United States Code, Chapter 207, which Order was subsequently continued on or about September 8, 2016, and on or about August 9, 2017, from the United States District Court for the Eastern District of New York, Case No. 2:16-cr-00446, which Order notified [Petitioner] of the potential effect of committing an offense while on release.
>
> All in violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18 United States Code, Sections 2 and 3147.

[CR Doc. 3 at 4]. The Court then reviewed the maximum penalty for this charge, providing that normally the maximum penalty would be a 20-year term of imprisonment for this charge, but that Petitioner would be sentenced to an additional consecutive term of imprisonment of not more than ten years for committing the offense while on release. [Id. at 6-7]. The Court noted, therefore, that the maximum penalty for Count One was thirty years' imprisonment. [Id. at 7]. Petitioner testified that he understood the charge to which he was pleading guilty and the maximum penalty therefore. [Id.]. Petitioner also testified that he had been over the charge with his attorney, that he understood the charge, and that he is in fact guilty of the charge. [Id. at 10-11].

The attorney for the Government then reviewed the terms of the plea agreement, including Petitioner's acknowledgement that there was a factual basis for his guilty plea, that the factual basis did not necessarily represent all relevant conduct, and that the Government may submit additional relevant conduct to the probation office or to the Court for sentencing purposes. [Id. at 14]. Petitioner testified that he had carefully reviewed the plea agreement with his attorney and that he understood and agreed with the terms of the agreement. [Id. at 15]. Petitioner also

4

confirmed that he understood that he was waiving the right to post-conviction challenge of his conviction and sentence in the plea agreement. [Id. at 16]. Petitioner testified that he "[was] satisfied with the services of [his] lawyer in this case." [Id. at 17]. Finally, Petitioner testified that he had heard and understood all parts of his plea proceeding and that he still wanted to plead guilty. [Id. at 18]. The Magistrate Judge found that Petitioner's guilty plea was knowingly and voluntarily made, and that the plea was supported by an independent basis in fact. [Id. at 19].

Before the sentencing hearing, a probation officer prepared a Presentence Investigation Report (PSR). [CR Doc. 43: PSR]. The probation officer recommended a Total Offense Level (TOL) of 25 and a Criminal History Category of III, yielding a guidelines imprisonment range of 70 to 87 months. [Id. at ¶¶ 54, 61, 84]. The probation officer also noted that the total statutory maximum term was 30 years, consisting of a 20-year maximum term for securities fraud plus an additional mandatory consecutive term of not more than 10 years for committing the offense while on release. [Id. at ¶ 83]. On Petitioner's objection to the Criminal History Category computation, the Court removed two criminal history points, yielding a Criminal History Category of II, yielding a guidelines range of 63 to 78 months. [CR Doc. 55 at 1: Statement of Reasons; see CR Doc. 71 at 23: Sentencing Tr.]. Petitioner was sentenced to a term of imprisonment of 60 months on Count One for the substantive offense and a term of 14 months, to be served consecutively pursuant to 18 U.S.C. § 3147, for a total term of imprisonment of 74 months. [CR Doc. 54 at 2: Judgment]. The Court also ordered restitution in the amount of $444,550.00. [Id. at 5]. Judgment on Petitioner's conviction was entered on September 20, 2019. [Id.].

Petitioner appealed his conviction and sentence to the Fourth Circuit Court of Appeals. [CR Docs. 59, 64]. The Fourth Circuit dismissed Petitioner's appeal, finding that Petitioner knowingly and voluntarily waived his right to appeal and that his arguments on appeal fell squarely

5

within that waiver. [CR Doc. 72]. On August 17, 2020, Petitioner filed the pending Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [CV Doc. 1].

## II. STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

Petitioner raises three claims based on ineffective assistance of counsel in his motion to vacate. Specifically, he argues that he received ineffective assistance because: (1) his attorney "failed to challenge the Government on the key 'in connection with the purchase or sale of a security' statutory requirement that's necessary for a 10(b) violation and a securities fraud conviction;" (2) his attorney failed to challenge the Government for not complying with the Private Securities Litigation Reform Act (PSLRA) heightened pleading requirements in not stating "with particularity and specificity … the circumstances surrounding the alleged securities fraud;" and (3) his attorney failed to attack the Government for its introduction of knowingly false evidence

"to the Court and Grand Jury that [Petitioner] 'solicited' the victims for their money through his company (CCM) website." [CV Doc. 1 at 11, 12, 14].

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Further, a petitioner must show that proceeding to trial would have been objectively reasonable. See United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012). In evaluating such a claim, statements made by a defendant under oath at the plea hearing

carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983). A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

Petitioner challenges relate to his attorney's pre-plea performance, which have been waived through Petitioner's knowing and voluntary guilty plea. See Fields, 956 F.2d at 1294-96. They are also subject to dismissal in any event. As to the first claim, Petitioner alleges that his attorney "failed to challenge the Government on the key 'in connection with the purchase or sale of a security' statutory requirement that's necessary for a 10(b) violation and a securities fraud conviction." [Doc. 1 at 11]. Petitioner asserts that his "fraudulent conduct did not 'touch' or 'coincide' with a securities transaction as the activity concluded prior to the purchase or sale of

any securities, and were independent, unrelated events." He argues further that "while [he] may certainly be guilty of common law fraud, he is not guilty of 'securities fraud.'" [Id.]. Petitioner's claim, therefore, is premised on his alleged innocence of the offense to which he pleaded guilty. In addition to having waived this claim through his knowing and voluntary guilty plea, Petitioner has not alleged or shown extraordinary circumstances to overcome the sworn testimony that he gave during the plea hearing. See Lemaster, 403 F.3d at 221-22. Accordingly, his claim of ineffective assistance on this issue fails.

Next, Petitioner claims that his attorney's performance was deficient for failing to challenge the Government's alleged non-compliance with the PSLRA's heightened pleading requirements. This claim wholly lacks merit. The PSLRA's heightened pleading requirements apply to private securities fraud litigation, not to criminal proceedings. See 15 U.S.C. § 78u-4(b)(2)(A) ("… [I]n any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."). As such, this claim will be dismissed.

Finally, Petitioner contends that his attorney failed to attack the Government for its introduction of knowingly false evidence "to the Court and Grand Jury that [Petitioner] 'solicited' the victims for their money through his company (CCM) website." [Doc. 1 at 14]. In support of this argument, Petitioner appears to reference testimony elicited from Petitioner's victims at his sentencing hearing. He states "none of the victims reported visiting the CCM website prior to investing or being solicited. Instead, they maintain that they came to [Petitioner] on their own accord because [Petitioner] was a cousin and family friend who experienced great success on Wall

9

Street for more than 30 years." [Id.]. Petitioner also claims that the Government "extended the timeline by two years for the alleged offenses, citing the continuing effects of prior wrongful acts to give them present effect." [Id.]. Again, Petitioner waived arguments regarding pre-plea representation by his attorney through his knowing and voluntary guilty plea. See Field v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Circ. 1992). Furthermore, Petitioner has not alleged or shown extraordinary circumstances to overcome the sworn testimony that he gave during the plea hearing. See Lemaster, 403 F.3d at 221-22. Accordingly, his claim of ineffective assistance on this issue is also without merit.

Additionally, while Petitioner claims that he would have "rejected the Plea Agreement … and insisted on going to trial" "but for counsel's constitutionally" deficient performance, Petitioner does not show that proceeding to trial would have been objectively reasonable. See United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012). The maximum penalty for Count One alone was 30 years. And Petitioner would have also faced six counts of wire fraud and two counts of transactional money laundering. Petitioner also argues that, in the alternative to proceeding to trial, he "would have pleaded to a lesser charge, such as wire fraud, which does not carry a 4-level enhancement," which would have resulted in a lower sentence. [Doc. 1 at 5]. There is no evidence that any such agreement was offered by the Government or available to Petitioner. Thus, Petitioner's claims of ineffective assistance of counsel also fail because he has not adequately alleged or shown prejudice.

In sum, for the reasons stated herein, Petitioner cannot show deficient performance or prejudice. His claims are, therefore, denied.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc.1] is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: November 2, 2020

Max O. Cogburn Jr.
United States District Judge

11

Case 3:20-cv-00469-MOC   Document 2   Filed 11/02/20   Page 11 of 11